IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ELIZABETH D.¹**, | Case No. 6:20-cv-2079-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Mark A. Manning, HARDER, WELLS, BARON & MANNING P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Elizabeth D. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and VXI

---

¹ In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

respectively of the Social Security Act (Act). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

In August 2018, Plaintiff applied for DIB and SSI, alleging disability beginning February 29, 2012. AR 247-60. The agency denied the claims both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 192-200, 210-17. Plaintiff appeared by telephone for a hearing before an administrative law judge (ALJ) in June 2020. At the hearing, Plaintiff amended her alleged onset date to November 3, 2016. AR 61-91, 13. Plaintiff was 31 years old as of the alleged onset date. AR 26. On July 2, 2020, the ALJ denied Plaintiff's claims for benefits. AR 10-32. Plaintiff requested review of the hearing decision, which the Appeals Council denied in October 2020. AR 242-44, 1-6. Accordingly, the ALJ's decision became the final decision of the agency. Plaintiff now seeks judicial review of the decision.

**A. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.

    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

  The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

PAGE 4 – OPINION AND ORDER

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## B.  The ALJ's Decision

As an initial requirement for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements through June 30, 2017. AR 16. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 29, 2012. *Id.* At step two, the ALJ found the following severe, medically determinable impairments: degenerative disc disease, obesity, post-traumatic stress disorder (PTSD), anxiety, and depressive disorder. *Id.* At step three, the ALJ determined that none of Plaintiff's severe impairments met or equaled a listing. AR 17.  Next, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b), with the following limitations:

> The individual can lift and carry 20 lbs. occasionally and 10 lbs. frequently. The individual can stand and walk 4 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The individual can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The individual can occasionally balance, stoop, and crouch, but never kneel. The individual can occasionally reach overhead bilaterally. The individual can frequently, but not constantly, handle and finger bilaterally. The individual can perform simple, routine tasks, but cannot engage in direct interaction with the general public. The individual can tolerate incidental contacts with coworkers and supervisors. The individual can tolerate occasional changes to work routines or processes. The individual cannot engage in work with extreme time pressures, such as conveyor belt work or work involving timed production quotas. The individual can tolerate no exposure to harsh atmospheric conditions (i.e. extreme heat, cold, wetness, humidity).

AR 19. At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 25. At step five, the ALJ found that Plaintiff retained the ability to perform other jobs in the national economy, including (1) assembler, small products; (2) assembler, electronic accessories; and (3) routing clerk. AR 26. The ALJ thus concluded that Plaintiff was not disabled under the Act from February 29, 2012, through July 2, 2020. AR 27.

## DISCUSSION

Plaintiff argues that the ALJ erred in considering the medical opinion testimony, in evaluating Plaintiff's subjective symptom testimony, and in considering lay witness testimony. The Court addresses each argument in turn.

**A. Medical Evidence**

Plaintiff filed her application for benefits on August 2, 2018. AR 247-60. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations also purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors,[2] in determining how persuasive the opinions are. 20 C.F.R.

---

[2] The secondary factors include relationship with claimant, specialization, and "[o]ther factors." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

§§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and the source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

The ALJ discussed the medical opinions of treating physician Andrew Yoder, a Licensed Clinical Social Worker (LCSW), at length. The ALJ found that portions of the medical records provided by Mr. Yoder were consistent with the opinions of other medical providers. AR 24. Specifically, the ALJ found that Mr. Yoder began seeing Plaintiff in 2014, and within a year had determined that Plaintiff was making significant progress. *Id.* The records cited by the ALJ reflect a decrease in the frequency of panic episodes from "multiple times per week up to nearly every day" to two to three per month, which later decreased to one to two times per month in 2017. AR 579, 586. In October of 2017, Mr. Yoder opined that, while Plaintiff had patterns of progress and regression, she experienced gradual, consistent long-term progress, and experienced panic attacks only one or twice monthly. AR 593. The ALJ notes that in late 2017 through 2018,

Plaintiff had largely normal mental status exams. AR 24, citing 592, 602-03, 607. The medical records that the ALJ cites throughout 2019 do not indicate significant or persistent increases in symptoms or crisis events, but rather a series of temporary situational stressors, such as a dispute with a landlord (AR 696), introduction of new medication (AR 701), and tension with roommates (AR 701). *See also* AR 688, 689 (indicating further that Plaintiff's stressors are situational).

The ALJ found that Mr. Yoder's conclusions were consistent with that of Plaintiff's primary care provider. AR 24. In 2019, Plaintiff's primary care provider observed that Plaintiff's overall mood appeared stable and recommended no change to Plaintiff's regimen. AR 663-64. At a follow-up visit in September 2019, the provider noted that Plaintiff had stable symptoms of depression and anxiety and was noted for appearing to be doing better. AR 903.

The ALJ, however, found that Mr. Yoder's statements made in May 2020 about Plaintiff's condition were inconsistent with other treating providers and not supported by Mr. Yoder's own notes. AR 25. In that report Mr. Yoder opined that Plaintiff had a marked impairment in all areas of social functioning and would be unable to maintain a regular work schedule more than four days per month. AR 24-25. The ALJ noted that Mr. Yoder's asserted support for his opinion included frequent intense and debilitating panic attacks. The ALJ found that the record, instead, reflects that Plaintiff had a stable mood through January and February 2020, and the record reflects that Plaintiff experienced both periods of joy and periods of melancholy during that time. AR 24, AR 819. Plaintiff points to medical records indicating that Plaintiff felt "little motivation or joy" during January and February 2020, but does not mention that the same record describes Plaintiff experiencing merely a "blah" feeling, and the treating provider specifically noted Plaintiff "has not been depressed." AR 823. Plaintiff points

PAGE 8 – OPINION AND ORDER

to medical records from her primary care provider on May 5, 2020, which indicate her anxiety and panic attacks had been worsening. AR 966-67. Plaintiff claims that these records undermine the ALJ's decision. The records from that time reflect a series of challenging events, such as a severe allergic reaction, Plaintiff's truck breaking down, and the death of one of her pets due to an attack from another pet. *Id.* But the ALJ noted that, weeks later on May 20, 2020, Plaintiff reported her anxiety and panic attacks had already begun to decrease, which Mr. Yoder had noted. AR 24, citing 959. Overall, the ALJ's reading of the record is a rational one and supported by substantial evidence. Although Plaintiff's reading of the record may also be rational, the Court is obligated to defer to the ALJ. *See Burch*, 400 F.3d at 679. Thus, the ALJ did not err in his evaluation of Mr. Yoder's medical opinion evidence.

**B. Plaintiff's Subjective Symptom Testimony**

    **1. Standards for Reviewing the ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. The ALJ's Evaluation of Plaintiff's Testimony

At step two, the ALJ offered the boilerplate conclusion that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 21. Plaintiff argues that the ALJ did not provide clear and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony. As discussed below, the ALJ discounted Plaintiff's testimony because Plaintiff's activities of daily living undermined her claims of debilitating anxiety, Plaintiff's symptoms improved with conservative treatment, and there is conflict between Plaintiff's testimony and the objective medical evidence.

      **a. Activities of Daily Living**

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff argues that the record fails to establish that the demands of Plaintiff's reported activities exceed her alleged limitations. Plaintiff cites *Reddick*, arguing "[o]nly if the level of activity were inconsistent with [Plaintiff's] claimed limitations would these activities have any bearing on [Plaintiff's] credibility." ECF 15 at 20 (citing *Reddick*, 157 F.3d at 722). Although the Court agrees that Plaintiff's activities are not inconsistent with her claimed physical limitations, Plaintiff's activities *are* inconsistent with her mental limitations, and constitute a clear and convincing reason to discount her testimony in that regard.

Plaintiff testified that she was unable to work due to both physical and mental limitations. AR 70-82. She stated that she had chronic lower back pain, a shoulder problem, and gout that sometimes limited her ability to walk and confined her to her home. AR 77. Plaintiff also testified to experiencing debilitating anxiety, especially in crowds or when interacting with others, and that she often had panic attacks. AR 79-81, 322.

The ALJ found that Plaintiff's testimony about the limiting effects of her physical symptoms was undermined by the slate of activities in which she participated, including taking walks, doing art projects, driving on a long road trip, and engaging in gardening. AR 21. The record also indicates that Plaintiff regularly fed the chickens on the property she lived on and collected their eggs. AR 323. These activities, however, are of the type that the Ninth Circuit has indicated cannot serve as a basis to discount a claimant's testimony. See *Vertigan*, 260 F.3d at 1050. As a result, the Court finds that Plaintiff's activities of daily living are not inconsistent with her claimed physical limitations.

As to Plaintiff's mental impairments, the ALJ found that Plaintiff's ability to interact with her friends regularly, maintain a long-term relationship with her boyfriend, and participate in a swim group all indicated that Plaintiff was able to engage in basic interaction with others. AR 23.

The record also reflects that Plaintiff sold her artwork at a local market, attended Bible study twice monthly, went shopping with roommates, and attended a swim group weekly. AR 809, 326, 348. These activities contradict Plaintiff's claims that her anxiety when interacting with others or among crowds was debilitating, and thus constitute a clear and convincing reason to discount Plaintiff's testimony as to her mental limitations.

### b. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3) 20 C.F.R. § 404.1529(c)(3)). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (simplified). "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (simplified).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years

PAGE 14 – OPINION AND ORDER

> and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

Plaintiff contends that the ALJ improperly summarized the treatment records by focusing on improved symptoms and by characterizing Plaintiff's impairments as "mild," and argues that Plaintiff's symptoms actually waxed and waned. In addition, Plaintiff disagrees with the ALJ's characterization of Plaintiff's mental health treatment as "conservative." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated.").

The ALJ found that Plaintiff's physical symptoms responded well to conservative physical therapy and acupuncture. AR 21. The ALJ noted that Plaintiff was referred to a physical therapist for an antalgic gait, but was found to have normal strength and no motor deficits. *Id.* The report the ALJ references was issued in January 2016, and the treatment provider stressed that surgical intervention was not necessary, but weight loss was. AR 423. On follow up six months later, Plaintiff reported physical therapy seemed to be helping. AR 521. The ALJ further noted that in April 2019, Plaintiff reported she had been walking and engaging in gardening during the day, and that although her pain had increased with increased walking, acupuncture was helping. AR 21, citing AR 781. Reports around this time consistently indicate that Plaintiff responded favorably to her acupuncture treatment. AR 778-88. In May 2019, the ALJ noted that Plaintiff reported she had walked one mile with only mild back pain and mild limitation from knee pain. AR 21-22, citing AR 856. Later, the ALJ noted that Plaintiff was able to carry a bucket of soil and was walk one-half mile every other day, but indicated she had then needed to limit walking to much shorter distances following a flare-up. AR 22, citing 892. Notably, the medical records suggest that Plaintiff's pain flare-ups sometimes followed isolated incidents,

PAGE 15 – OPINION AND ORDER

such as falling after being struck by a dog while gardening, or falling on grass. AR 881, 882. The ALJ's conclusion that, overall, Plaintiff was improving and progressing with acupuncture and core exercises is supported by medical records, although her progress was slow. *See* AR 793, 863-4, 869, 881-82.

Regarding Plaintiff's mental health treatment, the ALJ noted only that Plaintiff received routine mental health treatment "without much change over time" and had no history of psychiatric hospitalization or crises interventions. AR 23. The ALJ did not explain what mental health treatment he found to be conservative. The ALJ's sole statement is insufficient evidence of improvement with treatment for Plaintiff's mental health impairments. Thus, improvement with treatment is a clear and convincing reason to reject Plaintiff's subjective symptom testimony with respect to Plaintiff's physical impairments but not her mental impairments.

      c. **Objective Medical Evidence**

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

In the ALJ's discussion of Mr. Yoder's opinion, the ALJ explored much of the objective medical evidence, as detailed above. Particularly relevant are Plaintiff's largely normal mental status examinations, which revealed she was pleasant, cooperative, neat and clean, with a logical thought process, normal range of affect, and normal insight, judgment, and speech. AR 24, 592, 602, 607,

740-41. Additionally, as the ALJ states, counseling notes did not reflect significant or persistent increases in symptoms or crises events, other than moderate temporary increases in symptoms associated with situational stressors. AR 24, citing 687-769. Thus, the ALJ's determination that Plaintiff's testimony regarding her mental health complaints is undermined by objective medical evidence is supported by substantial evidence.

As to Plaintiff's back pain, the ALJ found that Plaintiff's back showed only mild degenerative changes. AR 21, citing 423. The ALJ cited medical records indicating that Plaintiff had normal ranges of motion in the cervical and lumbar spines without tenderness or deformity, and no motor weakness or sensory changes. AR 21, citing 552-53. Similarly, the ALJ found that X-rays following a reported flare-up of low back pain showed only mild degenerative changes of the lumbosacral junction, and minimal degenerative changes of the cervical spine. AR 21. Regarding Plaintiff's shoulder pain, The ALJ cited records indicating that Plaintiff's cervical and right shoulder X-ray images were normal and failed to explain Plaintiff's right shoulder symptoms. AR 22, citing 568. Lastly, regarding Plaintiff's knee pain, the ALJ cited to X-rays of the left knee in April 2016. AR 22, citing 566. Although these X-rays showed evidence of possible medial patellar articular surface osteochondral fracture with slight lateral subluxation of patella, possibly representing injury of medial retinaculum, repeat X-rays in May 2018 showed only minimal degenerative changes, and that Plaintiff's knee was more stable than previously found. AR 22, citing 569. As the ALJ concluded, substantial objective medical evidence undermines the extent of Plaintiff's testimony that her back, knee, and shoulder pain were disabling, which thus constitutes a valid reason to discount Plaintiff's testimony in that regard.

**C. Lay Witness Testimony**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

Plaintiff argues that the ALJ erred by failing to provide any reason to reject the lay witness testimony of Plaintiff's boyfriend, Mr. Jake Alfsen. The Commissioner responds that the new regulations do not require the ALJ to articulate a reason to discount nonmedical lay testimony. The Court rejects this contention. *See Kimberly T. v. Kijakazi*, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022) (finding that, under the new regulations, an ALJ must still provide a germane reason to discount nonmedical lay witness testimony).

The ALJ erred by failing to provide a germane reason to discount Mr. Alfsen's testimony. The error is harmless, however, because the ALJ has articulated reasons to reject the claimant's

subjective symptom testimony, which does not meaningfully differ from the lay witness testimony. *See Molina*, 674 F.3d at 1116-17. The ALJ properly rejected Plaintiff's subjective symptom testimony about her anxiety and relations with others, as well as her physical symptoms, including her back and knee pain, based on conflicts with objective medical evidence, her activities of daily living, and improvement with conservative treatment. These reasons apply equally to Mr. Alfsen's statement. Therefore, the error is harmless.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff is not disabled under the Act.

**IT IS SO ORDERED**.

DATED this 1st day of April, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge